Michael Zito appearing with Elizabeth Zito appellants and Kimberly Swafford appearing for Appalee. Okay, do we have Mr. Zito visually or just are your honor? I think you had me on audio. Can you hear me? We can hear you. Do you want to reserve a little time? Well, yes, I do. Thank you, your honor. And I have one question. I went to an older computer, got the zoom, it says that we're just waiting for the host to let us in. No, look, you're in right you're in because we can hear you the question of why your video isn't working. I don't know. Okay. So how long would you like to? How long do you want to reserve? 10 minutes. 10 minutes. Okay, sure. Okay, you can commence. Yes, your honor. Good mornings. And it's an honor to be present here to speak. I listened to your earlier comments about how to proceed. And we first identify myself, Michael Zito appellant, Okay, great. We're both present. And I listened, I'm sorry. Oh, I just said right. Okay. And I listened to how you want to proceed. And I know that you have read all of the, the statutes and the arguments that we have made in our briefs. And we filed other motions and for state pending appeals and things like that. So the record is pretty full with all kinds of exhibits and things like that. What I would like to do is in my own words, say how we feel the abuse of discretion happened very quickly in the court and what the solution will be. When we filed our petition back in December of 2022 was for one purpose. And that was to halt the trustee sale that was being brought by our by the by the holder of our note, which was had been sold about 14 times before they got it. It was Blue Castle, a Cayman Islands entity. So the trustee sale was stopped because we didn't have any other way to do it. And so that's how we entered the chapter 13. In the process of that, we filled out all of our schedules and everything else. Everything was, was proper. We had no problems with anything going forward in our bank, in our chapter 13, we, we have made every payment that was required total of about $95,000. We have made every payment required to the secured lender that we agreed on when they first opened it up. And it is the full payment. There was no reduction in 20, you know, and we paid them about 75,000 in that. As we're going along, we had an incident involving our prior business and it involved a company that we had owned that had gone, it was dissolved, a person went to a chapter seven. It was a company involved in a real estate development, and there was some remaining rights that that carried over to water rights, permits, approvals, entitlements, and things like that. We had hired a counsel to file our petition, Preston Gardner, and we brought the matter up. So look, we have these things. He said, look, I don't see anything here. And if, and if, and if it's not viable, if it ever becomes viable, well, then you got another problem. You got to redo your schedules. And that's in an email that we had presented as evidence. Well, let me, let me, let me, let me interject here for a second. OK, sure. At the hearing on the motion to dismiss, which was brought on the basis that you failed to identify assets and didn't include interest in several entities that you owned or perhaps had owned. And that were the subject of litigation that, you know, if you had decided it wasn't worth it, you could have defaulted on the litigation. You didn't do that, right? You just correct your own. Well, don't interrupt me. What Judge Collins basically ruled at the hearing on the motion to dismiss was that the failure to include an asset by itself is grounds to dismiss your case, correct? Correct. OK, you argued that, well, it doesn't really matter because we don't think they're worth anything, right? Correct. And Judge Collins said that is of no moment, correct? Correct. What's wrong with that? It's a very OK, it's a it's a very narrow the way they ruled it, because without you voluntarily then amended our schedules. Well, let me let me let me stop you there, too, OK, because the record actually is not quite so friendly. From the trustees motion to dismiss, which we read as part of the record, it seems like he became aware of this litigation and therefore these possible rights sometime in December of the year before of twenty twenty four, there was some kind of a large meeting with with you and other folks in February in which the trustee presumably said, gee, what's going on with this lawsuit and these assets? You didn't do anything then, did you? Did you amend your schedules that? We sent our we were I had counsel at the time for this specific purpose and we had said, let me just let me ask the question directly, did you amend the schedules then when it was clear that the trustee was aware of an asset that concerned him? I think the answer is no. No, we didn't have schedules. You amended the schedules the week after the trustee not only knew about this, but filed a motion to dismiss your case on bad faith. Is that right? That is correct. Then that I mean, explain to me how that's prompt. That's not that's not falling with my thinking about prompt, but help me out with that. OK, at the time, we sent the lawyers in to talk to the trustee and let them know what was going on. This was a case that they that they had said they all these assets and we said, well, you couldn't have we lost a property in foreclosure, but the assets were carried over and remained in the company three years later. And that's proven by the docket of the by synergy chapter seven docket, which said that in three years after the foreclosure, these that we had twenty five million in assets, he said they're only tied to the property. They that was they were that was out of cost basis that we had paid for permits, entitlements and improve entitlements for the property. So let me let me let me interject again. I'm sorry. This is this is a long way of saying you in your editorial wisdom decided it wasn't worth listening. Is that fair? Yes, your honor. But that's not the standard. OK, let me just tell you the same thing. Judge Collins told you that is not the standard. We do not want debtors editorializing about what they think something is worth or whether it's a viable asset. There's this whole possibility of listing here is an asset value unknown, uncertain, maybe zero. But there are circumstances where if we don't know the whole story on your assets, it is impossible fairly to adjudicate your case. And there are there are circumstances where you may think an asset is dormant or doesn't have any value, but the existence of that asset were it disclosed might well lead to something else, which is exactly why we don't want debtors being in the position of being the editors on this. That's why Judge Collins ruled the way he did. And what I need what I need you to do is tell me why that was wrong. Because, your honor, they didn't take in consideration the mitigating factors of our chapter 13 proceeding. Now, it's true exactly what you said is. Well, let me can I can I interrupt you again there for a second? How did Judge Collins not do that when he when he delayed his ruling? I mean, he said at the end of the hearing, one, I have the ability to dismiss this case right now because of your bad faith and not disclosing that I'm not going to do that because you've told me about these other transactions whereby you I think he literally said may pull a rabbit out of the hat. He delayed the ruling twice, didn't he? To let you try to work some magic with respect to a refire sale. OK, so tell me how that fits your theory that this was a mistake. It's it's quite a story we he had on a June at the June 17th hearing is when he dismissed us, he said, that's it. You know, we know he didn't. He delayed. He delayed it, didn't he? So as well, because on July 15th, we went in and I asked the judge, he said, I'm going to dismiss it effective August 1st. We went and said, look, we can get this done. Can we have to September 15th? And we thought of the plan. We had letters from lenders that we could do, which which would be able to pay the there was a delinquency on the mortgage. And there was our still our unsecured creditors, about one hundred eighteen thousand. Our house was worth about a million eight. We owed four hundred thousand to Blue Castle. And I said, we can get this done. It's got to go. As long as the court's approving it, we can get this done. Submitted the letters. He said, OK, fine. You have until you have until September 15th. We began working and we said we're going to get out of this because now we can get it done. Well, let me let me just interrupt you for a second. I don't know. Where are we on time for this? This is six forty left. OK, just just so you know, you wanted to reserve tenure at six forty now. I'm going to pose another question to you and then you can think about it and come back and answer it if you want. Is that OK? Yes, Your Honor. OK, Judge Collins, mindful of the fact that you'd made a lot of payments in this case and that you were telling him there was a way to get this solved. And maybe at the time that was more plausible than it turned out to be. That's all fine. OK, he twice gave you extensions. He twice with the ability to dismiss your case immediately didn't do it. OK, so you're going to have to tell me why that was. Why in that context, what he did was an abuse of discretion. You can think about that while you're worthy adversary gets their 15 minutes here. OK, yes, Your Honor. OK, all right. Counsel for the appellee, do you want to go ahead? Yes, sir. May it please the panel. Good morning, Your Honors. My name is Kim Swofford and I'm here on behalf of Appellee Edward Maney, Chapter 13 trustee in this case. As Your Honor has noted, this appeal asked the question of whether the bankruptcy court abused his discretion in dismissing the Chapter 13 case under 1307 C. And after finding bad faith based on the debtor's failure to disclose ownership interest in multiple LLC, some of which were actively asserting water rights claims during the pendency of the case. The short answer is no. The court applied the correct legal standard, conducted a totality of the circumstances analysis under Levitt v. Soto and made supported factual findings and exercise discretion well within Ninth Circuit law. As the court knows, this court reviews Chapter 13 dismissal under 1307 for abuse of discretion and the bad faith finding for clear error. Under the Ninth Circuit holdings in Eisen v. Curry and Levitt v. Soto, bad faith is recognized independent basis for dismissal. Bankruptcy court is not required to find fraud, malice or egregious conduct. The court must assess the totality of the circumstances. Well, and if it does, there are other remedies possible, right, including under 349. Yes, sir. With prejudice, et cetera. Yes, sir. And critically, as this panel held in Convy Barton, the Levitt factors are tools, not elements. So every factor doesn't have to be satisfied and need not be weighed equally. Here, the bankruptcy court cited the correct cases, articulated the correct standard and grounded its ruling in the record. There's no legal error. The central finding is undisputed. The debtors failed to disclose ownership interest in at least five LLCs on schedules A and B. Those omissions persisted through filing, through the 341 meeting, through plan confirmation. Approximately two weeks before plan confirmation, as a matter of fact, counsel for entities owned by the debtors sent a letter asserting water rights and inviting negotiations and collaboration and possibly some joint venture, the trustee learned of the entities only after being contacted by counsel for the entity that sued Biosynergy and also the counsel for Bysynergy. They called, they called our office and the trustee did not know anything of these assets. The debtors obviously believe the water rights were owned by Bysynergy or themselves, or had some value, or as the court noted, they wouldn't have defended the lawsuit. They just would have written off the water rights and moved on. That alone is enough to support bad faith. Ninth circuit law is clear under Hamilton v. State Farm and section 521. A debtor has an affirmative continuing duty to disclose all assets in the case, including contingent, disputed or unliquidated interest. Additionally, under the Ninth Circuit's holding US v. Lindholm, the omission is the equivalent of a false statement. Here, the debtor's response has continuously been the omitted entities had no value, but values irrelevant to disclosure, as the court noted. Once, when a debtor makes a disclosure, the trustee and creditors don't necessarily object, they investigate, they look at the disclosure. So the debtor must disclose first and let the trustee and the creditors evaluate. The debtors argue that these were passive dormant entities, but the record shows much more than passive dormant entities. They were actively asserting water rights and they sent the letter just weeks before planned confirmation. These facts fully support the court's conclusion that the debtors failed to disclose and misrepresented their financial affairs and manipulated the bankruptcy process, which is bad faith under Levitt. A major premise of the debtor's appeal is simply wrong as a matter of law. As the court has already noted, they argue that the bankruptcy court was required to find fraudulent intent or egregious behavior before dismissing the case, that is not Ninth Circuit law. Under Eisen, Levitt, and Doran, Enright Doran, fraudulent intent is not required. Egregious conduct is required only for dismissal with prejudice under section 349A. This case was not dismissed with prejudice. The debtors remained free to refile subject to the code and could have conceivably refiled rather than pursuing this appeal. The bankruptcy court explicitly recognized this distinction on the record and applied the correct legal standard. That alone defeats the appeal. The debtors also argue that they eventually did amend their schedules and the bankruptcy court was required to overlook the omission. The debtors did amend their schedules, but only after being contacted by the trustee. And that does not excuse an omission. That argument has been rejected repeatedly. Amendment after discovery by the trustee or third parties does not erase bad faith. If it did, the disclosure duty would be meaningless. The lack of objection to the debtor's amendment of their schedules also does not negate bad faith. Creditors in the, as I mentioned, creditors and the trustee don't object when a debtor amends. They look at the amendment to see if there's any value for the estate. As the bankruptcy court recognized, disclosure must be complete and timely. Here, the amendments only occurred after the trustee learned of the entities. Finally, the debtors argue that dismissal of the case deprived them of a discharge. But 11 U.S.C. 1328 requires completion of all plan payments and conditions of the plan. The debtor's plan in this case required that they sell their home and pay all creditors in full. The home was never sold. They're not entitled to a discharge until they complete the terms of the plan. They also represented to the court that they could get financing to pay off their creditors. That never happened. And as the court noted, the bankruptcy court allowed them additional time up till August 1st and then all the way till September 15th to get this done. Your honors, unless you have some questions, I would also just like to point out some of the papers that were filed by the debtor in opposition to my submission on the briefs. But I'll pause here to see if you have questions. I don't have any questions. Okay, Judge Brand. I have no questions. Okay, I don't have any at the moment either. So proceed as you like. If you'll just bear with me. The debtor filed a paper in response to my motion for submission on the briefs. And I just wanted to point out that maybe the trustee has a statutory role here. And much of what he pointed out is legally irrelevant. But as a matter of law, the Chapter 13 trustee is a neutral fiduciary of the estate, not a litigation ally of any secured creditor. The trustee's duties are defined by the bankruptcy code. They review plans, assess feasibility, ensure compliance, and protect the integrity of this process. The trustee does not control, direct, or manipulate a secured creditor's state law foreclosure remedies. This assertion that the trustee somehow aided and abetted the mortgage holder is rather faulty. And I'll just say that the debtors improperly attempt to reframe the disclosure-based dismissal as creditor-driven conduct. The record shows the trustee moved to dismiss because the debtors failed to disclose ownership interests. This is a core bankruptcy issue, wholly independent of the foreclosure posture. The suggestion that the trustee allowed Blue Cross to incur fees, pursue a sale, or leverage the case is speculative and legally misplaced. A Chapter 13 trustee does not approve creditor's fees, does not authorize the foreclosure strategy, does not manage loan enforcement. These matters are governed by the loan documents and state foreclosure law and creditor-initiated proceedings. Finally, even accepting the debtors' allegations at face value, they don't undermine the dismissal. The question before the panel is whether the bankruptcy court abused its discretion under the Levitt Totality of the Circumstances test. The undisputed facts remain that the debtors failed to disclose. This omission goes directly to candor and good faith in this process, which are central under Levitt and stands apart from foreclosure activity. In conclusion, Your Honors, we feel the case is not close. The bankruptcy court applied the correct law, made supported factual findings, and exercised discretion as the Ninth Circuit precedent permits. The debtors failed to disclose. That's bad faith under Levitt, Eisen, and Kahn. And for those reasons, the trustee respectfully asked this panel to affirm the dismissal and the order. Okay, any questions? No questions. Okay, thank you very much. Okay, can we remind the panel how long they have? You have six minutes, Mr. Zito. Yes, Your Honor. First of all, the idea of the abuse of discretion. According to Levitt, the test that you could have mitigating factors that would come into play under dismissal. Our mitigating factors are that we paid every plant payment that we were supposed to pay during the proceeding. We never filed anything that would be considered to be misleading or abusive in the entire process. Well, let me stop you right there. The failure to make a disclosure is misleading. Period. End of story. Number two, we're talking about abuse of discretion. Remember what that is. Abuse of discretion measures whether the court chose the right rule to decide the matter and whether its application of the rule was faulty and whether it's based on facts that are inappropriate or not in the record or simply wouldn't withstand scrutiny. So mitigation is something that may be within the Levitt factors, but it's not abuse of discretion. Okay, question is, did Judge Collins choose the wrong rule? He didn't. Okay, what he did, by the way, was give you three more months to try to pull a rabbit out of the hat here. Even though at the hearing on the motion of dismiss, number one, you were not in compliance with the plan, and number two, we found grounds to dismiss for bad faith. So, I mean, you were talking about mitigation. I think the record would suggest he took into account the fact that you've been making payments because he gave you three more months to cure a problem that could have ended the case right there. So tell me why that's wrong. Your Honor, I cannot tell you that it is wrong. Okay. I believe that what you said, I have no argument for that. I don't know any other rule the judge could have used except for the one that he did. And so my only point was that using that rule is to apply the mitigating factors that might change it. Because the choice would be, Your Honor, the way we see it, what would be better, to dismiss this out of the court and then, you know, nobody gets paid, or that we reverse it, go back in, finish off the plan that we had and end the whole thing and get discharged rather than dismissal. That was the whole point of our doing this whole thing with the appeal. It was, we did not want to be out until we finished it. Now, everything that you said was true. They gave us the extra time, but there were difficulties along the way. Very quickly, it was the idea that we had to sell the house in order to get a discharge. I have transcripts and quotes, have piles of things where the judge and the trustee both had never wavered from that point. And that was because we had a $317,000 delinquency, which of course we disputed, that was hanging there. And we said the only way out is to sell the house. Well, that was because your plan said you were going to do that. Yes, because that's the only way at the time. That was the only way. Okay, but I mean, it's not the judge telling you, your plan said we're going to dispose of this within X days of confirmation, right? Right. We filed the amended plan, your honor, because the judge took the automatic stay off. He said, look, you got the delinquency. I'm not going to, you know, they're going to do what they're going to do. So while we were in the 13 doing everything else, they took the automatic stay and Blue Castle then started another process. Back in August of 2024, we came right to the point. We sold our house, had it under contract, deposited all the money at Stewart Title. We were getting so close to the trustee sale that the buyer backed out. However, we had the income and my wife and I, we paid the $385,000 to cure the default. It was over. Didn't borrow any money, didn't do anything to our Chapter 13. I said, okay, now we don't have to sell the house. We can just refinance it because we don't want to sell the house. We don't have to. That's why we paid it and we went forward with the amended plan. We filed that amended plan in October of 2024. Even though it got distributed and there were no objections, there were no hearings on it. It just kept going and going and going. Finally, then in April, or when you saw, I think it was March or April, the trustee said, you're going to get dismissed. Now, our house was worth, like I said, it was continues to be worth $1.8 million. Now we lowered the mortgage by $385,000 plus the plan payments of $75,000. Yesterday, we just paid another reinstatement for $91,000. The loan is down so low. All we wanted to do, and they said, no matter what, it's reinstated, doesn't matter. You must sell the house. I have the transcript quotes, both the trustee and the judge, you must sell the house in order for a discharge. There is no way out of your deal. We don't care what it is. You are going to pay Blue Castle. That is in quotes and in transcript. You'll see it. I could give you a page in line. You've got about a minute left, okay?  All we want, Your Honor, is that it's nothing about whatever it was. We want to go back to the court, get the plan approved, get the financing. We can do it now because the thing is so low now. Good payment record through the bankruptcy. Then get the unsecured creditors place and come out with a discharge. We were hoping that they would take everything into consideration, the totality of circumstances of what we had done. Certainly, if anybody reads the transcripts, I'm talking just like I'm talking now. We don't hire these people. Everything is there. Let me help you out here. I read the transcript from the motion to dismiss. All of this was part of that lengthy discussion. Everything you're talking about now was part of the discussion. That's exactly why Judge Collins gave you a month and a half and then ultimately three months. None of this is new. With that, the matter is submitted. Thank you very much. We'll get your written decision as soon as we can. Thank you, Your Honors. Thank you very much. With that, I believe we're adjourned. All rise. Okay, thank you. Court is in recess.
judges: Brand, Lafferty, and Niemann